UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| CRUM & FORSTER SPECIALTY INSURANCE COMPANY, | § § § | |
| *Plaintiff,* | § § | EP-15-CV-00325-DCG |
| v. | § § | |
| GREAT WEST CASUALTY COMPANY, | § § | |
| *Defendant.* | § § § | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court are Plaintiff Crum & Forster Specialty Insurance Company's ("Crum & Forster") "Motion for Partial Summary Judgement" (ECF No. 84) and Defendant Great West Casualty Company's ("Great West") "Second Motion for Summary Judgment" (ECF No. 85) each filed on June 28, 2017. For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Crum & Forster's motion and **GRANTS IN PART AND DENIES IN PART** Great West's motion.

## I. BACKGROUND

This lawsuit arises from a dispute between Crum & Forster and Great West over their respective duties to defend and indemnify MVT Services, LLC ("MVT") in *Parada v. MVT Services, LLC*, No. 2013-DCV-3852 (Co. Ct. at Law No. 3, El Paso County, Tex. Oct. 10, 2013) ("the Parada lawsuit").[1] Great West issued a Workers' Compensation and Employers' Liability Policy containing a duty to defend,[2] a duty to indemnify,[3] and an "other insurance" clause.[4]

---

[1] *See* Pl.'s Mot. Partial Summ. J. App'x at 004.

[2] Great West's policy states:
**We Will Defend**

Crum & Forster issued an Occupational Shield Policy also containing a duty to defend,[5] a duty to indemnify,[6] and an "other insurance" clause.[7] The instant lawsuit turns on the application of these provisions.

---

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this Insurance. We have the right to investigate and settle these claims, proceedings or suits. We have no duty to defend a claim, proceeding or suit that his not covered by this Insurance.
Pl.'s Third Am. Compl. ¶ 12, ECF No. 40.

[3] Great West's policy declares that it "will pay all sums that you legally must pay as damages because of bodily injury to your employees[.]" Pl.'s Mot. Partial Summ. J. App'x at 136.

[4] The Great West "other insurance" clause provides:
**Other Insurance**
We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.
*Id.* ¶ 13.

[5] Crum & Forster's policy explains in relevant part:
**DUTY TO DEFEND**
*We* have the right and duty to defend at *Our* expense any suit or proceeding against *You* for claims covered by this policy. *We* reserve the right to participate with *You* in the defense, settlement, or appeal of any claim, suit or proceeding from the date *We* receive notice of the *Occurrence* resulting in *Loss*. We shall pay any legal defense costs incurred by *Us* to defend a particular claim. Such defense payments made by *Us* shall not be applied against the *Self-Insured Retention*, are not subject to the *Self-Insured Retention* and will not be applied against the *Limits of Liability* as shown on the Declarations Page. *Our* duty to defend ends when *We* pay to *Your Employee* or their *Beneficiary*, or to *You*, or to a court or other adjudicatory body, an amount equal to the applicable Limits of Liability shown on the Declarations Page.
*Id.* ¶ 9 (emphasis in original).

[6] Crum & Forster's duty to indemnify arises from a clause stating: "*We* will pay on *Your* behalf for *Losses* which *You* are legally obligated to pay as *Damages* because of *Bodily Injury, Occupational Sickness or Disease* and *Cumulative Trauma* to *Your Employees*[.]" *Id.* ¶ 8 (emphasis in original).

[7] The Crum & Forster "other insurance" clause discloses:
**Other Insurance**
If any other insurance, indemnity and/or reimbursement agreement exists protecting *You* against *Loss* covered by this policy, this insurance shall apply in excess of any other insurance, indemnity and/or reimbursement agreement.
Pl.'s Third Am. Compl. ¶ 10 (emphasis in original).

The Parada lawsuit arose from a single-vehicle, double-fatality accident that occurred on September 15, 2013 and took the lives of passenger, Lawrence Parada, and driver, John Mitchem.[8] MVT alerted both Crum & Forster and Great West, its alleged insurers, to the accident's occurrence.[9] On October 10, 2013, the family of Lawrence Parada filed suit against MVT alleging negligence, gross negligence, and that Parada was an MVT employee.[10] On October 28, 2013, MVT provided Great West with the petition from the Parada lawsuit.[11]

Subsequently, Great West denied Parada's workers' compensation claim and refused to defend MVT.[12] Great West based its denial of coverage on MVT's request that Great West terminate its workers' compensation coverage on August 13, 2013.[13] On August 14, 2013, Great West filed the notice of termination of MVT's workers' compensation coverage with the Texas Department of Insurance, which resulted in the cancellation of the policy becoming effective 30 days after the date of filing under Texas law.[14]

---

[8] Plaintiff's Response to Defendant's Proposed Undisputed Facts ¶ 7 [hereinafter, "Pl.'s Resp. Re. PUF"], ECF No. 90.

[9] Defendant's Response to Plaintiff's Proposed Undisputed Facts ¶ 2 [hereinafter, "Def.'s Resp. Re. PUF"], ECF No. 91.

[10] *Id.* ¶ 8.

[11] *See* Pl.'s Mot. Partial Summ. J. App'x at 018.

[12] Def.'s Resp. Re. PUF ¶¶ 6–7.

[13] *Id.* ¶ 8.

[14] Pl.'s Resp. Re. PUF ¶¶ 5–6. However, under Texas Gov't Code § 311.014(b), "[i]f the last day of any period is a Saturday, Sunday, or legal holiday, the period is extended to include the next day that is not a Saturday, Sunday, or legal holiday." September 14, 2013 fell on a Saturday. MVT directing Great West to § 311.014(b) is what caused Great West's later change in position. *See* Pl.'s Mot. Partial Summ. J. App'x at 191 ("We appreciate you having directed our attention to § 311.014(b) of the Texas Govt. Code. We understand this code section extends certain time periods if the time period ends on a Saturday, Sunday or legal holiday. September 14, 2013 was a Saturday and as a result under section 311.014(b), Tex. Govt. Code, and so it appears that the termination date for MVT's Texas workers compensation coverage under the WC/EL policy was extended to the following Monday, i.e. September 16, 2013.").

Crum & Forster agreed to defend MVT in the Parada lawsuit and provided that defense for nearly two years without Great West's participation.[15] In May 2015, MVT filed a coverage action against Great West contesting the denial of coverage under the workers' compensation policy.[16] On May 22, 2015, Great West retracted its denial of coverage, admitted that its policy covered MVT on the day of the accident, and acknowledged its duty to defend MVT in the Parada lawsuit.[17] Following this change in position, Great West took control of the defense of MVT, and Crum & Forster ceased paying for MVT's defense.[18] In August 2015, Great West and Crum & Forster both paid their respective policy limits of $1,000,000 on behalf of MVT to settle the Parada lawsuit.[19]

On November 4, 2015, Crum & Forster filed the instant lawsuit against Great West seeking declaratory relief and the reimbursement of the defense costs and indemnity it paid on behalf of MVT in the Parada lawsuit.[20] On June 28, 2017, the parties filed the instant motions. Crum & Forster and Great West both filed their responses to the motions on July 12, 2017 and filed their replies on July 19, 2017.

---

[15] *Id.* ¶ 9.

[16] Def.'s Resp. Re. PUF ¶ 10.

[17] *See* Pl.'s Resp. Re. PUF ¶ 11. *See also* Pl.'s Mot. Partial Summ. J. App'x at 191 ("Accordingly, based on § 311.014(b), Great West amends its coverage determination and finds that the coverage period for MVT's Texas WC/EL policy included the date of loss for this matter, September 15, 2013 .... Great West acknowledges its duty to defend MVT in the lawsuit").

[18] *See* Def.'s Resp. Re. PUF ¶ 13. *See also* Def.'s Second Mot. Summ. J. at 4 ("In May[] 2015, GWCC agreed to participate in the defense 'going forward;' it then fully engaged in the defense of MVT. At that point, Crum & Forster stopped paying for MVT's defense.").

[19] Pl.'s Resp. Re. PUF ¶ 12. *See also* Pl.'s Mot. Partial Summ. J. App'x at 068, 119.

[20] *See id.* ¶ 13. *See also* Pl.'s Third Am. Compl. ¶¶ 25–34.

## II. STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of fact exists when evidence is sufficient for a reasonable jury to return a verdict for the non-moving party, and a fact is material if it 'might affect the outcome of the suit.'" *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In deciding whether a genuine dispute as to any material fact exists, a trial court considers all of the evidence in the record and "draw[s] all reasonable inferences in favor of the nonmoving party," but it "refrain[s] from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation and internal quotation marks omitted).

Procedurally, the party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[21] *EEOC v. LHC Grp.*, 773 F.3d 688, 694 (5th Cir. 2014) (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). When the nonmoving party will bear the burden of proof at trial, the moving party may satisfy this responsibility by "point[ing] out the absence of evidence supporting the nonmoving party's case." *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990); *see also Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544–45 (5th Cir. 2005).

---

[21] The Court, here, uses the terms "dispute" and "issue" interchangeably. *See* Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendment (stating that in the amended rule, "genuine 'issue' becomes genuine 'dispute.' Dispute better reflects the focus of a summary-judgment determination.").

If the moving party succeeds, "the onus shifts to the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *E.E.O.C.*, 773 F.3d at 694 (internal quotation marks omitted) (citing *Celotex Corp.*, 477 U.S. at 324). However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Davis v. Fort Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (*en banc*) (*per curiam*)).

In evaluating whether the parties have met their respective burden, "the Court considers only competent summary judgment evidence." *Reeves v. Wells Fargo Bank, NA*, No. EP-14-CV-00187-DCG, 2015 WL 11598711, at *1 (W.D. Tex. Sept. 4, 2015) (citing, *inter alia*, *Goodwin v. Johnson*, 132 F.3d 162, 186 (5th Cir. 1997)); *see also* Fed. R. Civ. P. 56(c).

### III. DISCUSSION

By its motion, Crum & Forster requests that the Court enter partial summary judgment declaring that Great West is obligated to reimburse Crum & Forster for the defense costs paid on behalf of MVT. The theories of subrogation and contribution provide the basis for Crum & Forster's claim to a right of reimbursement. Pl.'s Mot. Partial Summ. J. at 4. Great West, on the other hand, requests that the Court enter summary judgment against Crum & Forster on its claims for declaratory relief[22] and reimbursement.[23] Below, the Court addresses each claim in turn.

---

[22] Crum & Forster requested three declarations regarding its duty to defend:
a. Great West's duty to defend MVT in the Parada Lawsuit began when it was first tendered to Great West.
b. The Crum & Forster Policy only applied if the Great West Policy did not.
c. Crum & Forster is entitled to recover the costs it paid in the defense of MVT in the Parada Lawsuit from Great West.

-6-

A. **Right to Reimbursement**

Great West asserts in its Second Motion for Summary Judgment that the Court should grant it summary judgment on Crum & Forster's allegation that it has a right to reimbursement from Great West for the amounts it paid to defend and indemnify MVT. The Court will analyze Crum & Forster's right to reimbursement for defense costs and indemnity in succession.

*1. Reimbursement of Defense Costs*

The threshold question in determining whether Crum & Forster has a right to reimbursement for the defense costs it paid on behalf of MVT is whether and when Great West had a duty to defend MVT. Great West does not contest that it had a duty to defend MVT, but rather, it argues that duty did not arise until it retracted its denial of coverage and voluntarily undertook MVT's defense. Def.'s Second Mot. Summ. J. at 18–21. Great West provides no case law supporting this proposition. Quite the contrary, under Texas law, the duty to defend arises when "'a petition alleging a potentially covered claim is tendered to the insurer.'" *Royal Ins. Co. of Am. v. Hartford Underwriters Ins. Co.*, 391 F.3d 639, 644 (5th Cir. 2004) (quoting *Lafarge Corp v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 400 (5th Cir. 1995)). A denial of a claim does not sever the contractual obligation to provide a defense. *See Cont'l Cas. Co. v. N. Am. Capacity Ins. Co.*, 683 F.3d 79, 87–88 (5th Cir. 2012) (explaining that the primary insurers each

---

Pl.'s Third Am. Compl. ¶ 27. Further, Crum & Forster requested three declarations regarding its duty to indemnify:
    a. The Crum & Forster Policy only applied if the Great West Policy did not.
    b. Crum & Forster's indemnity obligation was never implicated in the Parada Lawsuit.
    c. Crum & Forster is entitled to recover the amounts paid towards the settlement of the Parada Lawsuit on behalf of MVT.
*Id.* ¶ 30.

[23] Crum & Forster asserted that it had a right to reimbursement of the costs it paid to defend and indemnify MVT in the Parada lawsuit. *Id.* ¶ 34 ("Crum & Forster now seeks recovery from Great West for the amounts paid in defense and indemnity on behalf of MVT in the Parada Lawsuit.").

retained their contractual obligations to provide a defense at all times following their wrongful refusals to defend the insured).

Further, Texas utilizes the eight-corners rule in determining whether the duty to defend is implicated. *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011) (citing *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009)). Practically, this rule establishes that "[w]hen an insured party is sued, an insurer's duty to defend is determined solely by the facts alleged in the petition and the terms of the policy." *Id.* If the plaintiff's factual allegations even potentially support a claim, the insurer must defend its insured. *Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.*, 592 F.3d 687, 691 (5th Cir. 2010) (quoting *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006)). This is true because the allegations against the insured are "liberally construed in favor of coverage." *Fed. Ins. Co. v. Northfield Ins. Co.*, 837 F.3d 548, 552 (5th Cir. 2016) (quoting *GuideOne Elite Ins. Co.*, 197 S.W.3d at 308). Indeed, Texas law mandates that courts resolve all doubts regarding coverage in favor of the insured. *Trinity Universal Ins. Co.*, 592 F.3d at 691.

Accordingly, the Court finds that Great West, by its own admission, had a duty to defend MVT, and the petition from the Parada lawsuit implicated Great West's duty to defend when it was tendered to Great West on October 28, 2013. This finding is in accordance with the settled principles of Texas insurance law that an insurer must defend when a petition is presented with a claim that is potentially covered under its policy.

Having determined that Great West had a duty to defend MVT, the Court now addresses whether Crum & Forster can recover the costs spent defending MVT prior to Great West's

change in position. Crum & Forster advances two theories upon which it relies: subrogation and contribution. The Court will discuss each claim in turn.

### (a) Subrogation

Crum & Forster asserts that under the theory of equitable subrogation it is entitled to reimbursement from Great West of all its costs paid to defend MVT in the Parada lawsuit. Great West contends that Crum & Forster "voluntarily" made payments when it accepted the obligation to defend MVT despite there being doubts about whether its policy covered MVT. Def.'s Second Mot. Summ. J. at 11–13.

"To prevail on a claim of equitable subrogation, a party must show that it involuntarily paid a debt primarily owed by another which in equity should have been paid by the other party." *Colony Ins. Co.*, 647 F.3d at 256 (citing *Mid-Continent Ins. Co.*, 236 S.W.3d at 774 and *Frymire Eng'g Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 142 (Tex.2008)). However, Texas courts tend to give a lot of latitude to insurers when determining whether payments were made involuntarily. *Colony Ins. Co.*, 647 F.3d at 256 ("Nonetheless, in the context of equitable subrogation, Texas courts have been liberal in their determinations that payments were made involuntarily."). Further, "[a]n insurer who pays a third-party claim against its insured is not a volunteer if the payment is made in good faith and under a reasonable belief that the payment is necessary to its protection." *Keck, Mahin & Cate v. Nat'l Union Fire Ins. of Pittsburgh*, 20 S.W.3d 692, 702–03 (Tex.2000). In considering a similar argument, Texas Supreme Court rejected Great West's conception of the volunteer doctrine by stating:

> KMC's position is contrary to our liberal application of the reasonable belief rule. Adopting it would significantly increase potential conflicts of interest between insureds and their insurers. If an insurance company's right to subrogation could be challenged by the wrongdoer on the grounds that the policy did not actually provide coverage, it would necessarily be in the company's interest to litigate all

> questionable claims with its insured . . . . KMC's conception of the volunteer doctrine is bad public policy, and we decline to adopt it.

*Id.* at 703 (internal citations and quotations omitted). It is a settled principle of Texas insurance law that an insurer should first defend and indemnify the insured before seeking reimbursement for the costs that another insurer should have paid. *Cont'l Cas. Co.*, 683 F.3d at 86 (quoting *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 308 (5th Cir.2010)). Accordingly, Crum & Forster's handling of the Parada lawsuit was consistent with the principles announced by the Texas Supreme Court and Fifth Circuit. Crum & Forster chose to defend the insured after Great West's wrongful denial rather than risk leaving the insured completely unprotected by disputing its policy coverage. Great West cannot now allege that Crum & Forster acted voluntarily by living up to its legal and contractual duties. Thus, the Court finds that Crum & Forster's payments of defense costs on behalf of MVT were involuntary because they were made in good faith and under a reasonable belief that the payments were necessary for its protection.[24]

The Court already determined that Great West owed a duty to defend MVT starting on October 28, 2013. Based on its analysis above, the Court also finds that Crum & Forster involuntarily paid a debt to defend MVT that Great West was at least partially responsible for paying. Moreover, it is equitable to expect Great West to contribute to the costs of defending MVT as it was contractually obligated to do.

---

[24] Crum & Forster's argument of good faith and reasonable belief is bolstered by the fact that a Great West employee indicated to MVT that it had coverage under Crum & Forster's policy. *See* Pl.'s Mot. Partial Summ. J. App'x at 14 ("You folks appear to have coverage for these claims[] via Crum & Forester [sic]. Please put them on notice and get claims set up, so they can't later assert late coverage as a coverage defense."); *id.* at 18 ("Coverage for this matter is to be found under your Employers Liability policy with Crum & Forester [sic], not Great West.").

Accordingly, the Court GRANTS partial summary judgment for Crum & Forster on its request for a declaration that Great West is obligated to reimburse Crum & Forster for defense costs paid on behalf of MVT.

### (b) Contribution

Crum & Forster also argues that it has a right to contribution from Great West for the defense costs paid on behalf of MVT. The elements of a contribution claim "require that the several insurers share a common obligation or burden and that the insurer seeking contribution has made a compulsory payment or other discharge of more than its fair share of the common obligation or burden." *Mid-Continent Ins. Co.*, 236 S.W.3d at 772. Great West asserts that Crum & Forster cannot establish the common obligation or burden element for a contribution claim. Def.'s Second Mot. Summ. J. at 13–14. The Texas Supreme Court, in *Mid-Continent*, held that a pro-rata "other insurance" clause makes the insurance contracts several and independent of each other, so co-insurers are unable to meet the common obligation requirement of a contribution claim. *Mid-Continent Ins. Co.*, 236 S.W.3d at 772. *Mid-Continent* further held that "a co-insurer paying more than its proportionate share cannot recover the excess from the other co-insurers." *Id.*

However, the Fifth Circuit has limited *Mid-Continent* to its narrow facts. "*Mid–Continent* applies in cases where 'the insurers (1) were co-primary insurers; (2) did not dispute that both covered the loss; and (3) were subject to pro rata clauses.'" *Cont'l Cas. Co.*, 683 F.3d at 86 (quoting *Colony Ins. Co.*, 647 F.3d at 258). *See also Colony Ins. Co.*, 647 F.3d at 258 ("*Mid–Continent* does not preclude subrogation claims by excess insurers, but rather, is limited to disputes between co-primary insurers."); *Amerisure Ins. Co.*, 611 F.3d at 307–08 ("Limiting *Mid–Continent* to such circumstances is faithful to the longstanding view of the Texas Supreme

Court, as articulated over half a century ago by Justice Jack Pope, that dueling coinsurers must place the interests of their insureds before their own."). In a case with a similar dispute as the one before the Court, the Fifth Circuit rejected the application of *Mid-Continent*; found that the duty to defend is not rendered several and independent by "other insurance" clauses; and held that the insurer satisfied the common obligation requirement for a contribution claim. *Trinity Universal Ins. Co.*, 592 F.3d at 695 ("An 'other insurance' clause does not modify [the duty to defend] so as to render it several and independent . . . . Appellants satisfied the 'common obligation' requirement for a contribution claim."). Additionally, the Fifth Circuit held in *Trinity* that the second and final element of the contribution claim was satisfied by one of the insurers failing to participate in the insured's defense as it was required to do by contract. *Id.* ("Because EMC admits that it did not participate in or contribute to Lacy Masonry's defense, Appellants satisfy the second requirement for a contribution claim, 'that the insurer seeking contribution has made a compulsory payment or other discharge of more than its fair share of the common obligation or burden.'") (quoting *Mid-Continent Ins. Co.*, 236 S.W.3d at 772).

In accordance with Fifth Circuit precedents, the Court rejects Great West's argument that Crum & Forster cannot establish the common burden or obligation element of a contribution claim. The Fifth Circuit limited *Mid-Continent* to a narrow set of circumstances that are not present here. Crum & Forster is the excess insurer, while Great West is the primary insurer, and Great West originally refused to defend MVT until it retracted that decision and assumed the defense later in the process. Thus, *Mid-Continent* is not applicable to the instant case.

Additionally, as in *Trinity*, both Great West and Crum & Forster had an obligation to furnish a complete defense to MVT. *See id.* at 695 ("[I]f even a single claim in a lawsuit potentially falls within an insurance policy's coverage, the insurer has a duty to provide a

*complete* defense." (emphasis in original)). Therefore, Crum & Forster has established the common obligation element. In accordance with *Trinity*, the second and final element of the contribution claim here was established by Great West's failure to contribute to MVT's defense until its change in position in the late stages of the Parada lawsuit. Therefore, Crum & Forster has established a claim for contribution of the defense costs paid on behalf of MVT.

Great West next contends that Crum & Forster waived its right to reimbursement by not obtaining a reservation of rights before assuming MVT's defense. Def.'s Resp. Pl.'s Mot. Partial Summ. J. at 7–8. "[W]hen an insurer acknowledges that it has the duty to defend the insured, but still questions whether it must indemnify, 'it [will] usually issue[ ] a reservation of rights letter when it accepts the defense, agreeing to defend the insured without waiving its right to decline coverage later.'" *Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388, 392 (5th Cir. 2014) (quoting *Unauthorized Practice of Law Comm. v. Am. Home Assur. Co.*, 261 S.W.3d 24, 40 (Tex.2008)). Nevertheless, the Fifth Circuit has rejected the proposition that an insurer must reserve its rights with regards to another insurer when assuming the defense of an insured. *See St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 207–08 (5th Cir. 1996) ("Landmark and Lexington cite no authority for the proposition that an insurer must reserve its rights vis à vis another *insurer* when it assumes the defense of an insured . . . . [T]he waiver rule invoked . . . is simply not intended to be applied to the relationship among insurers." (emphasis in original)). The Court agrees with the Fifth Circuit's analysis and rejects Great West's interpretation of the waiver rule.

Accordingly, the Court GRANTS partial summary judgment for Crum & Forster on its request for a declaration that Great West is obligated to reimburse Crum & Forster for defense costs paid on behalf of MVT.

### (c) "Other Insurance" Clauses

Next, Great West avers that if Crum & Forster can recover defense costs, it cannot recover all of its defense costs because both policies include "other insurance" clauses. Def.'s Second Mot. Summ. J. at 17–21. Great West further argues that the existence of conflicting "other insurance" clauses means that both insurers are responsible for a "pro-rata split" of the total defense costs. Def.'s Second Mot. Summ. J. at 17. Texas law disposes of the problem of dueling "other insurance" clauses by determining whether the clauses "conflict or can be harmonized." *Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.*, 444 S.W.2d 583, 585 (Tex. 1969).

Moreover, the Fifth Circuit has interpreted *Hardware Dealers* broadly in applying the "other insurance test." *Am. States Ins. Co. v. ACE Am. Ins. Co.*, 547 F. App'x 550, 553 (5th Cir. 2013) (*per curiam*). *See also Royal Ins. Co. of Am.*, 391 F.3d at 643 ("This court has cautioned against applying overly narrow constructions of the *Hardware Dealers* rule."). The Fifth Circuit has considered whether an excess "other insurance" clause and a pro-rata "other insurance" clause conflict. It found that a "reasonable construction" of the two policies under a broad viewing of *Hardware Dealers* "yields a conflict." *Royal Ins. Co. of Am.*, 391 F.3d at 644. *See also Willbros RPI, Inc. v. Cont'l Cas. Co.*, 601 F.3d 306, 312–13 (5th Cir. 2010) (*per curiam*) ("Although the district court's interpretation—that the policies are not in conflict because Lexington's 'Other Insurance' clause, by its own terms, is primary, while CNA's 'Other Insurance' clause, by its own terms, renders its policy excess—is reasonable, it is contrary to controlling Fifth Circuit precedent."). When the "other insurance" clauses conflict, the defense costs are apportioned on a pro-rata basis. *Willbros RPI, Inc.*, 601 F.3d at 313 ("Because we do not find the instant case distinguishable from *Royal Insurance,* we hold that the Lexington and

CNA 'Other Insurance' provisions conflict and that liability for defense of the underlying suit should be apportioned on a pro rata basis."). This accords with the principle that the duty to defend "creates 'a debt which is equally and concurrently due'" from each of the insureds' multiple insurers. *Trinity Universal Ins. Co.*, 592 F.3d at 695 (quoting *Mid-Continent Ins. Co.*, 236 S.W.3d at 772).

Based on the holdings of the Fifth Circuit, Great West is correct that the "other insurance" clauses conflict. Crum & Forster's "other insurance" clause renders the policy excess, while Great West's "other insurance" clause is a primary pro-rata clause. Fifth Circuit precedents hold that these clauses conflict. Therefore, Great West is correct that Crum & Forster cannot recover all of its defense costs. Rather, Crum & Forster can only recover the costs it spent in excess of its pro-rata share of the total defense costs incurred by both insurers while defending MVT. Accordingly, Crum & Forster and Great West must establish the total costs each spent defending MVT in the Parada lawsuit and determine the pro-rata share of these costs.[25]

## 2. *Reimbursement of Indemnity*

Crum & Forster also asserts that it is entitled to a reimbursement of the indemnity it paid on behalf of MVT to settle the Parada lawsuit. It bases this argument on theories of equitable subrogation and contribution. "An insurer has a duty to indemnify an insured for losses covered

---

[25] In determining the pro-rata share of the defense costs, Crum & Forster and Great West should analyze it under the framework provided in *Travelers Lloyds Ins. Co. v. Pac. Employers Ins. Co.*, 602 F.3d 677, 687 (5th Cir. 2010) ("The remaining question is how the cost of the settlement should be apportioned between Travelers and Pacific. Under Texas law, coverage should be pro-rated between the two insurers proportionate to the coverage each policy provided."). *See also Hardware Dealers Mut. Fire Ins. Co.*, 444 S.W.2d at 590 ("Hardware's limits of liability . . . are the minimum limits specified in the financial responsibility law of Texas. Farmers' limits of liability are the same. The liability is equally prorated between the two companies and each has an obligation to defend the insured."). In this case, the insurer that paid more than its pro-rata share would be entitled to recover the difference between what it paid and its pro-rata share of the costs.

by the insurance policy." *Royal Ins. Co. of Am.*, 465 F.3d at 619. The doctrine of equitable subrogation allows a party who otherwise would lack standing to step into the shoes of and pursue the claims belonging to the party with standing. *Frymire Eng'g Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 142 (Tex. 2008). "To prevail on a claim of equitable subrogation, a party must show that it involuntarily paid a debt primarily owed by another which in equity should have been paid by the other party." *Colony Ins. Co.*, 647 F.3d at 256. Contribution, on the other hand, requires "that the several insurers share a common obligation or burden and that the insurer seeking contribution has made a compulsory payment or other discharge of more than its fair share of the common obligation or burden." *Mid-Continent Ins. Co.*, 236 S.W.3d at 772.

Great West contends that it is not liable to Crum & Forster because it paid its policy limits while indemnifying MVT in the settlement. Def.'s Second Mot. Summ. J. at 21–23. In order to succeed on a claim of equitable subrogation, a party must prove that it paid a debt primarily owed by another. In order to succeed on a contribution claim, a party must prove that it paid more than its fair share of a common obligation or burden. Great West paid its policy limits on behalf of MVT in the settlement of the Parada lawsuit. Crum & Forster also paid its policy limits as the excess insurer. Therefore, Crum & Forster did not pay more than its fair share or pay a debt primarily owed by Great West. Great West fulfilled its contractual duty to indemnify. Crum & Forster cannot step into the shoes of MVT to recover from Great West because Great West fulfilled its obligations to MVT in regards to its duty to indemnify.

Accordingly, the Court GRANTS summary judgment for Great West on Crum & Forster's claims for reimbursement and declaratory relief regarding its payment of an indemnity to settle the Parada lawsuit.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Plaintiff Crum & Forster Specialty Insurance Company's "Motion for Partial Summary Judgement" (ECF No. 84) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendant Great West Casualty Company's "Second Motion for Summary Judgment" (ECF No. 85) is **GRANTED IN PART AND DENIED IN PART**.

So ORDERED and SIGNED this 11th day of September 2017.

DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE